IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-00497-REB-BNB

MICHAEL BACKUS,

Plaintiff,

v.

JOSEPH ORTIZ, Executive Director, Colo. D.O.C.,
DENNIS P. DIAZ,Controller, Colo. D.O.C., and
L.D. HAY, Director Admin. & Finance, Colo. D.O.C.,

Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on the following cross-motions for summary judgment:

1.  **Plaintiff's Motion for Summary Judgment** [Doc. #21, filed 3/22/06] (the

"Plaintiff's Motion"), and

2.  **Defendants' Motion for Summary Judgment** [Doc. #25, filed 4/4/06] (the

"Defendants' Motion").

I respectfully RECOMMEND that the Defendants' Motion be GRANTED and that the

Plaintiff's Motion be DENIED.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*.  I must liberally construe the pleadings of a *pro se*

plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  Nevertheless, I cannot act as advocate

for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of

Civil Procedure.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed.R.Civ.P., provides that summary judgment may be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and designate specific evidence showing that there is a genuine issue for trial. Id. at 324.

## II.   UNDISPUTED MATERIAL FACTS[1]

1.   In 1995, the plaintiff was found guilty after a jury trial of Murder in the First Degree in violation of section 18-3-102, C.R.S., and Conspiracy in violation of section 18-2-201, C.R.S. *Plaintiff's Response to Defendants' Motion for Summary Judgment* ("Plaintiff's Response"),

---

[1]The plaintiff provides a "response" to each of the defendants' factual statements. *Plaintiff's Response*, pp. 1-5. To the extent the "responses" consist of immaterial factual statements and/or are unsupported by evidence, the "responses" fail to establish a material fact dispute. In addition, the plaintiff submits an unsworn affidavit pursuant to 28 U.S.C. 1746. *Plaintiff's Response*, Appendix A-2. To the extent the affidavit contains conclusory allegations, the allegations are not considered competent evidence. Finally, the Plaintiff's Motion is replete with unsupported statements of fact which I do not consider in my analysis of this matter.

Appendix A-1.  The Routt County District Court ordered the plaintiff to pay over one million

dollars in restitution,[2] court costs, and fines as a part of his criminal sentence.  *Defendants'*

*Motion*, p. 1, ¶ 1; Exhibit A-1, p. 1, Response to Request No. 1.

     2.   The plaintiff is currently incarcerated at the Limon Correctional Facility.  *Complaint*,

p. 2, ¶ 1.

     3.   At the time of his arrest, the plaintiff had on his person cash and money orders in the

amount of $2,652.26.  These funds, as well as the plaintiff's personal items, were confiscated

when he was taken into custody.  *Defendants' Motion*, p. 1, ¶ 2; p. 2, Exhibit A-1, Response to

Request No. 2.

     4.   On June 3, 2004, the Routt County District Court issued an order denying the

plaintiff's request for return of the cash and money orders.  Id. at pp. 1-2, ¶ 3; Exhibit A-2.  The

order states:

> The Court concludes that the Defendant is not entitled to the return
> of the money orders or coins presently held by the District
> Attorney's Office at this time.  Rather, the fact that said funds are
> under the control of the District Attorney should be reported to the
> executive director of the Colorado Department of Corrections so
> that disposition of the same may be made pursuant to C.R.S. § 16-
> 18.5-106.[3]

---

[2]The plaintiff states that "[t]he Routt County District Court did not order me to pay any restitution whatsoever.  Instead I was ordered to pay a 1 million dollar fine for the class 2 felony conviction of conspiracy to commit first degree murder; $300 thousand dollars was ordered to by paid to the victim's compensation fund; and $38 thousand dollars was ordered for court costs." Id. at Exhibit A-1, Response to Request No. 1.  The order to pay $300,000.00 to the victim's compensation fund is an order to pay restitution.  Section 18-1.3-602(3), C.R.S.

[3]Section 16-18.5-106 provides in part:

> (1) Whenever a person is sentenced to the department of
> corrections, the department of corrections is authorized to conduct

3

Id. at Exhibit A-2, p. 2.  As to the plaintiff's request for the return of other items, the Routt

County District Attorney's Office was ordered to further brief the court regarding any items

reasonably believed to have evidentiary value in the event the plaintiff was granted a new trial.  Id.

 

      5.   On July 6, 2004, the Routt County District Court issued an order regarding the

plaintiff's request for the return of other items.  The order directed the District Attorney to notify

the Colorado Department of Corrections ("DOC") of the existence of the cash and money orders.

Id. at p. 2, ¶ 5; Exhibit A-3.  The order states that with respect to the cash and money orders:

> [T]he People shall, within 10 days hereafter, give written notice to
> the Executive Director of the Colorado Department of Corrections,
> regarding the existence of these items, and requesting a response
> within 30 days as to what action, if any, he desires to take with

---

> an investigation into the financial circumstances of the defendant, as
> described in section 16-18.5-104(3), for purposes of determining
> the defendant's ability to pay court ordered costs, surcharges,
> restitution, time payment fees, late fees, and other fines, fees, or
> surcharges pursuant to section 16-18.5-110.
>
> (2) During any period of time that a defendant is a state inmate, as
> defined in section 17-1-102(8), C.R.S., the executive director of the
> department of corrections, or his or her designee, may fix the time
> and manner of payment for court ordered costs, surcharges,
> restitution, time payment fees, late fees, and any other fines, fees, or
> surcharges pursuant to section 16-18.5-110 resulting from a
> criminal case or for child support, and may direct that a portion of
> the deposits into such inmate's bank account be applied to any
> outstanding balance existing before, on, or after September 1, 2000.
> At a minimum, the executive director shall order that twenty
> percent of all deposits into an inmate's bank account, including
> deposits for inmate pay shall be deducted and paid toward any
> outstanding order from a criminal case or for child support. If an
> inmate owes money on more than one order from a criminal case or
> for child support, the executive director may equitably apportion
> payments among the outstanding obligations.

respect to said items.  A copy of said notice shall be filed with the Court, and any response from the Executive Director received by the People shall also be filed with the Court within 10 days after receipt of the same.  The People must also provide to the Defendant copies of the notice and the Executive Director's response within the same deadlines for filing the same with the Court.  The Court anticipates that so long as the Executive Director takes or directs action with respect to these items as contemplated by statue [including C.R.S. 16-18.5-106] no further orders of this Court will be necessary.  However, if the Executive Director fails to timely respond or otherwise exercise his authority with respect to this matter, then the Defendant may renew his Motion in this regard.

Id. at Exhibit A-3, pp. 2-3.

6.   The Assistant District Attorney for Routt County, Kerry St. James, notified the DOC of the existence of the funds and advised the DOC that the judge recommended that it collect 100% of the funds for payment toward costs, fines, and restitution ordered in the plaintiff's criminal case.  Id. at p. 2, ¶ 6; Exhibit A-11, ¶¶ 5-6; Exhibit A-5, ¶ 3.

7.   In accordance with section 16-18.5-106, C.R.S., the Executive Director of the DOC, defendant Joseph Ortiz, issued Executive Directive 26-04 which amended Administrative Regulation 200-15 ("AR 200-15").  Id. at p. 3, ¶¶ 8-9; Exhibit A-5, ¶¶ 1-3.  Administrative Regulation 200-15 previously stated that at least 20% of all deposits into an inmate's bank account would be deducted and paid toward an outstanding balance for court ordered restitution, costs, and fines incurred on or after September 1, 2000.  Id. at Exhibit A-6, p. 2.  It was amended to add the statement that the Executive Director can order up to 100% of an inmate's deposit be applied toward any outstanding order from a criminal case.  Id. at p. 3, ¶ 9; Exhibit A-6, p. 2.

8.   The amendment was prompted by the request of Mr. St. James after he told the DOC

that the judge recommended 100% of the plaintiff's funds be applied toward the costs of his

criminal case.  Id. at Exhibit A-5, ¶ 3.

9.   The DOC had previously not collected more than 20% for restitution and/or child

support from any other inmate deposits.  Id. at Exhibit A-5, ¶ 4.

10.   The plaintiff's funds were received by the DOC and deposited into the DOC's bank

account.  Id. at p. 3, ¶ 10; Exhibit A-5, p. 2, ¶¶ 6-7.

11.   The DOC applied 100% of the $2,652.26 toward the costs, fines, and restitution

ordered in the plaintiff's criminal case.  Subsequently, the DOC determined that section 16-18.5-

106(2), C.R.S., allowed that up to 99.9% of an inmate's deposits could be applied to court

ordered costs, fines, and restitution, but not 100%.  The plaintiff was refunded $2.65, or 0.1% of

the $2,652.26.  Id. at p. 3, ¶¶ 11-12; Exhibit A-5, ¶¶ 6-7; Exhibit A-8.

12.   Administrative Regulation 200-15 was revised to reflect that up to 99.9% of an

inmate's deposits can be applied to court ordered costs.  Id. at p. 3, ¶ 13; Exhibit A-10, p. 2.

The plaintiff filed his Prisoner Complaint (the "Complaint") on March 16, 2005 [Doc. #2].

The Complaint alleges three claims for relief.  Claim One alleges that the application of 100% of

the plaintiff's funds to his criminal debt violated the plaintiff's procedural due process and equal

protection rights.  Claim Two alleges that sections 16-18.5-106 and 18-1.3-603, C.R.S., are *ex

post facto* in nature.  Claim Three alleges that the defendants conspired with Mr. St. James to

violate the plaintiff's equal protection and due process rights.[4]

---

[4]To the extent the plaintiff attempts to bring other claims, those claims are unintelligible
and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating
that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of

The plaintiff sues the defendants in their official and individual capacities. *Complaint*, p.

1. The plaintiff seeks declaratory and injunctive relief. Id. at p. 8. He also seeks compensatory,

nominal, and punitive damages. Id. The parties seek summary judgment in their favor on all

claims.

### III.   ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State, . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.   Official Capacity Claims

Although the defendants assert a defense of immunity in their Answer [Doc. #10, filed

6/20/05], they do not address Eleventh Amendment immunity in their summary judgment briefs. I

must address Eleventh Amendment immunity, however, because it is implicated with respect to

the subject matter jurisdiction of this court to determine the plaintiff's claims. Koerpel v. Heckler,

797 F.2d 858, 861 (10th Cir. 1986) (stating that "[i]nasmuch as federal courts are courts of limited

jurisdiction, the court may and, in fact, has an obligation to inquire into its jurisdiction *sua*

*sponte*").

The Eleventh Amendment bars suits in federal courts against unconsenting states by the

state's own citizens and by citizens of another state. Port Auth. Trans-Hudson Corp. v. Feeney,

_____

alleging sufficient facts on which a recognized legal claim could be based").

495 U.S. 299, 304 (1990).  Eleventh Amendment immunity "constitutes a bar to the exercise of

federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir.

2000) (emphasis omitted).  Eleventh Amendment immunity applies to suits arising under 42

U.S.C. § 1983.  Quern v. Jordan, 440 U.S. 332, 345 (1979).

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their

official capacities as to retroactive monetary relief, but not as to prospective injunctive relief.

Pennhurst, 465 U.S. at 102-03,105-06.  The defendants are employed by the Colorado

Department of Corrections (the "DOC").  *Complaint*, p. 2.  The DOC is an agency or subdivision

of the State of Colorado.  Consequently, the Eleventh Amendment bars suit against the

defendants in their official capacities for retroactive monetary relief.  I respectfully

RECOMMEND that all claims against the defendants in their official capacities for retroactive

monetary relief be DISMISSED based on Eleventh Amendment immunity.

**B.  Qualified Immunity**

The defendants assert that they are entitled to qualified immunity on the plaintiff's claims

against them.  *Defendants' Motion*, pp. 2-3; *Response to Motion for Summary Judgment*

("Defendants' Response") [Doc. #29, filed 4/11/06], pp. 6-7.  Qualified immunity protects

government officials sued in their individual capacities.  Buchwald v. University of New Mexico

School of Medicine, 159 F.3d 487, 492 (10th Cir. 1998).

> Qualified immunity protects from litigation a public official whose
> possible violation of a plaintiff's civil rights was not clearly a
> violation at the time of the official's actions.  It is an entitlement not
> to stand trial or face the other burdens of litigation.  The privilege is
> an immunity from suit rather than a mere defense to liability.  When
> a defendant asserts the defense of qualified immunity, the burden
> shifts to the plaintiff to overcome the asserted immunity.  The

> plaintiff must first establish that the defendant's actions violated a
> constitutional or statutory right.  If the plaintiff establishes a
> violation of a constitutional or statutory right, he must then
> demonstrate that the right at issue was clearly established at the
> time of the defendant's unlawful conduct.

Ahmad v. Furlong, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations

omitted).

The plaintiff bears a heavy two-part burden in establishing that the defendants violated

clearly established law.  Teague v. Overton, 15 Fed.Appx. 597, 600 (10th Cir. 2001).  This burden

must be met before the defendants bear their initial burden on summary judgment:

> A summary judgment decision involving the defense of qualified
> immunity is reviewed "somewhat differently" from other summary
> judgment rulings.  When a defendant raises the issue of qualified
> immunity, the plaintiff must satisfy a two-part test.  First, the
> plaintiff must demonstrate that the defendant's actions violated a
> constitutional or statutory right.  Second, the plaintiff must show
> that the constitutional or statutory right the defendant allegedly
> violated was clearly established at the time of the conduct at issue.
> A right is clearly established only if there is a Supreme Court or
> Tenth Circuit decision on point, or the clearly established weight of
> authority from other courts has found the law to be as the plaintiff
> maintains.  Only if the plaintiff establishes both elements of the test
> does the defendant bear the traditional burden of showing that there
> are no genuine issues of material fact and that he or she is entitled
> to judgment as a matter of law.

Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotations and citations

omitted).

The plaintiff has not demonstrated that the defendants' alleged actions violated any clearly

established constitutional right.  He does not cite any Supreme Court or Tenth Circuit decision on

point, nor does he provide any clearly established weight of authority from other courts on point.

He cites only to general case law on equal protection, due process, *ex post facto*, and conspiracy.

9

Although these authorities broadly mandate the protection of an inmate's constitutional rights, they do not address the specific violations alleged by the plaintiff concerning restitution. Therefore, the authorities cited by the plaintiff do not demonstrate that the rights alleged here were clearly established at the time of the defendants' conduct.  Accordingly, the defendants are entitled to qualified immunity on all of the plaintiff's claims as asserted against them in their individual capacities.

### C.   Remaining Claims for Prospective Injunctive Relief

### Claim One: Equal Protection

Claim One alleges that the defendants' actions in seizing and applying the plaintiff's funds to his criminal debt violated his equal protection rights because the DOC has not collected more than 20% for restitution and/or child support from any other inmate deposits.  *Complaint*, p. 4.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quotations and citation omitted).

The plaintiff does not provide any evidence to establish that any of the other inmates are similarly situated to him, *i.e.*, that they had money confiscated from them at the time of their arrests; that the trial court issued an order stating that they are not entitled to the return of the money and directing the DOC to dispose of the money pursuant to section 16-18.5-106, C.R.S.; and that the DOC applied the money to restitution and/or child support obligations pursuant to section 16-18.5-106, C.R.S.  I respectfully RECOMMEND that summary judgment be entered in favor of the defendants on Claim One's allegations regarding equal protection.

**Claim One: Procedural Due Process**

Claim One further alleges that the defendants violated the plaintiff's procedural due

process rights by seizing and applying 100% of his money[5] to his criminal debt instead of 20%,

and by seizing the money without first depositing it into his inmate account as required by section

16-18.5-106, C.R.S.

The Due Process Clause of the Fourteenth Amendment guarantees due process when a

person may be deprived of life, liberty, or property. U.S. Const. amend. XIV, § 1. "A due

process claim under the Fourteenth Amendment can only be maintained where there exists a

constitutionally cognizable liberty or property interest with which the state has interfered."

Steffey v. Orman, 461 F.3d 1218, 1221 (10th Cir. 2006). The plaintiff alleges that he has "a

vested property right to the money that was in his possession at the time of his arrest and had no

connection to the crimes he was convicted of." *Complaint*, p. 4.

A deprivation does not reach protected property interest status unless it imposes an

"atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Steffey, 461 F.3d at 1221 (quoting Sandin v. Conner, 515 U.S. 472 (1995) and applying its liberty

interest analysis to property interests).

The DOC determined that under section 16-18.5-106, C.R.S., it could apply 99.9% of the

plaintiff's funds to his outstanding criminal debt. Section 16-18.5-106 is part of a comprehensive

scheme of restitution statutes. The restitution statutes were established by the General Assembly

for the following reasons: criminal offenders should be under a moral and legal obligation to make

---

[5]I note that the record establishes that 99.9% of the plaintiff's money, not 100%, was seized and applied to his court criminal debt.

full restitution to those harmed by their misconduct; the payment of restitution is a mechanism for

the rehabilitation of offenders; restitution is recognized as a deterrent to future criminality; the

victims and their families are entitled to timely compensation; and former procedures for

restitution collection have proven to be inadequate and inconsistent.  Section 18-1.3-601(1),

C.R.S.

Restitution statutes are to be construed liberally to facilitate and provide for full collection

of restitution for crime victims and to ensure effective and timely assessment, collection, and

distribution of restitution.  Id. at § 18-1.3-601(1)(g)(I)-(II), (2).

Section 16-18.5-106(2) gives the DOC discretion to "fix the time and manner of payment"

of court ordered costs, restitution, and fines.  The DOC *may* direct that a portion of the deposits

into an inmate's bank account be applied to any outstanding criminal debt.  Id.  At a minimum, the

DOC *shall* order that 20% of all deposits into an inmate's bank account be applied to any

outstanding balance.  Id.  In addition, the DOC is authorized to conduct comprehensive

investigations into the financial circumstances of inmates, including examination of the inmate's

stock certificates; deeds, titles, or other evidence of ownership; state and federal tax records; and

insurance policies. Section 16-18.5-104, C.R.S.

Thus, the DOC is not only authorized, but it is obligated, to facilitate timely payment of

restitution by criminal offenders.  The DOC's application of 99.9% of the plaintiff's funds to his

$1 million dollar criminal debt does not impose an atypical and significant hardship on the plaintiff

in relation to the ordinary incidents of prison life.

To the extent the plaintiff complains that AR 200-15 prohibited the DOC from collecting

more that 20% of his inmate deposits, the initial language of AR 200-15 provided that "*at least*"

20% of all deposits into an inmate's bank account may be applied to pay any outstanding balance resulting from a criminal case.  The fact that the DOC later amended the language of its regulation to clarify its discretion does not change the fact that it already had discretion to apply more than 20% under the language of the statute and the language of its initial regulation.

Insofar as the plaintiff complains that the DOC did not deposit the funds in his inmate account before applying them to his outstanding obligations, the plaintiff is placing form over substance.  It is undisputed that the money belonged to the plaintiff, and it is immaterial whether it was placed in the plaintiff's account or the DOC's account prior to applying it to the plaintiff's debts.  I decline to find a violation of a constitutional magnitude based on the DOC's failure to comply with this technicality.

I respectfully RECOMMEND that summary judgment be granted in favor of the defendants on Claim One's allegations regarding violation of the plaintiff's due process rights.

### Claim Two: Ex Post Facto

Claim Two alleges that, because sections 16-18.5-106 and 18-1.3-603, C.R.S., require that any restitution owed by the plaintiff be increased by a rate of 12% per annum, these statutes "are *ex post facto* in nature and violate his protections aginst [sic] an increase in penalty/punishment."  *Complaint*, p. 5.

*Ex post facto* legislation is prohibited by Article I, Section 10 of the United States Constitution.  The United States Supreme Court has defined *ex post facto* legislation as "any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the

13

act was committed." Beazell v. Ohio, 269 U.S. 167, 169-70 (1925). The prohibition against *ex post facto* legislation does not "limit legislative control of remedies and modes of procedure which do not affect matters of substance." Id. at 171. The determination of whether a state statute violates the *ex post facto* clause is a question of federal law. Lindsey v. Washington, 301 U.S. 397, 400 (1937).

The restitution statutes do not affect the crime for which the plaintiff was indicted, the punishment prescribed therefor, or the quantity or degree of proof necessary to establish his guilt. The statutes merely establish procedures to facilitate the collection of restitution, costs, and other charges that were imposed as a part of the plaintiff's original sentence. As a result, the restitution statutes do not violate the prohibition against *ex post facto* legislation. See Dobbert v. Florida, 432 U.S. 282, 294 (1977).

I respectfully RECOMMEND that summary judgment be entered in favor of the defendants on Claim Two.

### Claim Three: Conspiracy

Claim Three alleges that all of the defendants conspired with Mr. St. James to deprive the plaintiff of his equal protection and due process rights. *Complaint*, p. 6. To succeed on a claim for conspiracy to deprive a plaintiff of his constitutional rights, the plaintiff must prove both the existence of the conspiracy and the deprivation of constitutional rights. Thompson v. City of Lawrence, 58 F.3d 1511, 1517 (10th Cir. 1995). In proving the existence of a conspiracy,

> [a] plaintiff . . . need not prove that each participant in a conspiracy
> knew the exact limits of the illegal plan or the identity of all the
> participants therein. An express agreement among all the
> conspirators is not a necessary element of a civil conspiracy. The
> participants in the conspiracy must share the general conspiratorial

14

> objective, but they need not know all the details of the plan
> designed to achieve the objective or possess the same motives for
> desiring the intended conspiratorial result.  To demonstrate the
> existence of a conspiratorial agreement it simply must be shown
> that there was a single plan, the essential nature and general scope
> of which was known to each person who is to be held responsible
> for its consequences.

Snell v. Tunnell, 920 F.2d 673, 702 (10th Cir. 1990).  Conspiracies must often be established with circumstantial evidence because direct evidence of an express agreement among all conspirators is rarely available.  Id.

The record is void of any evidence that the defendants conspired to violate the plaintiff's constitutional rights.  The record demonstrates only a concerted effort to apply the plaintiff's funds toward payment of his criminal debt.  I respectfully RECOMMEND that summary judgment be entered in favor of the defendant on Claim Three.

## IV.  CONCLUSION

I respectfully RECOMMEND that all claims against the defendants in their official capacities for retroactive monetary relief be DISMISSED based on Eleventh Amendment immunity.

I further RECOMMEND that the Defendants' Motion be GRANTED in its entirety and that summary judgment be entered as follows:

1.   In favor of the defendants on all claims asserted against them in their official capacities for prospective injunctive relief; and

2.   In favor of the defendants on all claims asserted against them in their individual capacities based on qualified immunity.

I further RECOMMEND that the Plaintiff's Motion be DENIED.

15

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and

Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file

specific, written objections.  A party's failure to serve and file specific, written objections waives

*de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn,

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A

party's objections to this recommendation must be both timely and specific to preserve an issue

for *de novo* review by the district court or for appellate review.  United States v. One Parcel of

Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated November 15, 2006.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge